UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jose A. Justino,<br>          Plaintiff,<br><br><br>          -v-<br><br><br>Jennifer Reis,<br>Angel Quiros,<br>Nick Rodriguezs,<br>William Mulligan,<br>Carlos Nunez,<br>Lalitha Pieri,<br>Damian Doran,<br>Wolf-Craig,<br>Dougherty,<br>          Defendants. | Civil Action No.: 3:23-cv-00132(SRU)<br><br>**COMPLAINT AMENDED**<br><br>Date: February 11, 2023 |

## PRELIMINARY STATEMENT

1.  This is a civil rights action brought by the Plaintiff, Jose A. Justino
as a result of Defendants retaliation action. Plaintiff has been subjected to
inhumane and dangerous conditions, deliberate indifferences, inter alia. His
unlawful treatment has contributed to, and exacerbated the mental illness which
he sufferssand had received inadequate treatment.

This action is brought in good faith aS well as in the interest of justice
for damages, as well as declaratory and injunctive relief under Title 42 U.S.C.
Section 1983, specifically, as more particularly delineated below for claims
alleging cruel and unusual punishment in violation of the protections guaranteed
by the Eighth Amendment of the U.S. Constitution as applied to the States by the
Fourteenth Amendment, as well as violation of his First Amendment rights.

Plaintiff contends that the deprivations and violations of his constitutional
rights were carried out pursuant to rule, regulations, customs, policies, and prac-
tices and procedures of the Defendants in their individual and official capacities
as employees of the State of Connecticut Department of Corrections (DOC) and that
the named Defendants, acting under color of state law, knowingly caused Plaintiff
to be deprived of his State and Federal Constitutional rights.

2.   Plaintiff respectfully request that this Honorable Court declare that the acts amd/or omissions that were committed by the Defendants were unconstitutional under the U.S. Constitution emjoin the Defendants from perpetuating the lack of due process and equal protection of the law to the detriment of Plaintiff and, by an award of damages compensate him for the violations of his constitutional right to deter the Defendants from further participation in such unconstitutional acts and/or omissions.

<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

3. This is an action filed pursuant to Title 42 U.S.C. Section 1983 in good faith, as well as in the best interest of justice by this Plaintiff, a state sentenced prisoner, alleging violations of his constitutional rights to be protected from inhumane and dangerous conditions, deliberate indifference, equal protection of the law being denied, denied due process and free from retaliation. Plaintiff is seeking declaratory and injunctive relief, as well as money damages as relief for the aforesaid deprivations.

<u>JURISDICTION</u>

4.   This action arose under and is brought in good faith and in the best interest of justice pursuant to Title 42 Section 1983 to remedy the deprivation under color of law of the rights guaranteed by the Eighth, Fourteenth and First Amendments of the U.S. Constitution.

<u>PARTIES</u>

5.   Plaintiff Jose A. Jusino has been incarcerated at all times relevant to this complaint under the care  and custody of the Connecticut D.O.C.

6.   Defendant Angel Quiros at all times to this complaint was, and is still, Commissioner of the Connecticut D.O.C.. His duties are to administer and oversee the policies, practices, and procedures as well as the responsibility for the safety of all inmates under the care and custody of the Connecticut D.O.C.. He is being sued in his individual and official capacity.

7.   Defendant William Mulligan was, at all relevant times the Deputy Commissioner of Operations and Rehabilitating Services of the D.O.C. In his duties he is being sued in his indivudual and official capacity.

8.   Defendant Nick Rodriguez was, at all relevant times to this complaint, District Administrator. He is responsible to oversee all facility wardens, policies, practices, and procedures of the Connecticut D.O.C.. He is being sued in his official and individual capacity.

9.   Defendant Jennifer Reis was, and at all relevant times to this complaint, Warden for the Cheshire Correctional Institution. She is being sued in her official and individual capacity.

10.  Defendant Dougherty was, and at all relevant times to this complaint, Warden for the MacDougall Correctional Institution. He is being sued in his official and individual capacity.

11.  Defendant Damian Doran was, at all relevant times to this complaint, Deputy Warden at the MacDougall Correctional Institution. He is being sued in his official and individual capacity.

12.  Defendant Lalitha Pieri was, at all relevant times to this complaint, Supervising Psychologist at the MacDougall Correctional Institution. She is being sued in her official and individual capacity.

13.  Defendant Wolf-Craig was, at all relevant times to this complaint, Supervising Psychologist at the Cheshire Correctional Institution. She is being sued in her official and individual capacity.

14.  Defendant Carlos Nunez; at all relevant times to this complaint was, and still is, the Deputy Warden at the Cheshire Correctional Institution. He is being sued in his official and individual capacity.

## DEMAND FOR JURY TRIAL

15.  This complaint contains a jury demand pursuant to Rule 38(b) of the Federal Rules of Procedures and the Rights secured under the Seventh Amendment to the U.S. Constitution. Plaintiff respectfully demands a trial by jury on all triable issues herein.

## EXHAUSTION OF REMEDIES

16.  Plaintiff has exhausted his Administrative Remedies to the greatest extent reasonably possible, but Defendant Reis put Plaintiff on Grievance Restriction and Defendant Quiros had created policies that prohibited Plaintiff from exhausting his administrative remedies.

F A C T S

17.   Plaintiff has been incarcerated since 2005 for virtually his entire adult life, brief period as a minor. From 2007 through 2020, Plaintiff was classified. Housed to Restrictive Housing Status (RHS). Particularly  during the Plaintiff's  young adult and brain development, which Plaintiff was subjected to live in abysmal conditions; oppressing conditions of solitary confinement. There has been extensive studies and cases on this harmful effect due to long term effects of solitary confinement, particularly for those with mental illness.

18.   Plaintiff has been diagnosed with multiple psychological disorder conditions which compromises his mental health, such as abnormal brain structure and function, cognitive disorder, anxiety disorder, persistent depressive disorder, obsessive-compulsive disorder, anti-social personality disorder, borderline personality disorder; low average broad intellectual ability with no educational degree.

19.   Plaintiff by history and diagnosis presents a complex set of mental health and behavioral issues. Impulsivity in at least two areas that are potentially self-damaging. Recurrent suicidal behavior, affective instability due to a marked reactivity of mood, chronic feeling of emptiness, inappropriate, intensed anger or difficulty controlling anger, stress-related paranoid ideation or severe dissociative symptoms. Is more susceptible than average to repeating maladaptive behaviors, and has difficulty learning from poor choices and errors in decision making, engage in all or nothing thinking, emotional reasoning.

20.   Mental Health Supervising Psychologist (MHSP) Santarsiero becoming familiar with Plaintiff's history and diagnosis put together a behavior management and transition plan to assist Plaintiff's transition to general population after over thirteen and a half (13½) years in Restrictive Housing Status. The behavior transition plan was manipulated by custodial officials.

21.   January 2022, Counselor Maiorana waas assigned to Plaintiff's housing unit. Counselor Maiorana was identified in this behavior transitional plan to be Plaintiff's point person, due to having a positive established relationship, baseline level of knowledge and familiarity with the Plaintiff which would help to address Plaintiff's deep level of mistrust and therefore be able to engage in thes constructive resolution of any problems, which has been a factor in Plaintiff's history that when he has a person that he trusts he does not receive Disciplinary Reports for violations and maladaptive behaviors. Counselor Maiorana being familiar and having knowledge of Plaintiff's history and diagnosis; understanding that Plaintiff's behavior transitional plan was being disregarded and the unproductive

(4)

time leads to negative obsessing thoughts and ruminations about past traumatic experiences which could cause risk to Plaintiff and/or others. Provided Plaintiff with a job assignment to be her office assistance which consist of cleaning, organizing, painting, etc, which was productive work, help reindorce prosocial behavior and give sense of purpose. It was an outlet for Plaintiff as he was able to vent about his emotions, moods and thoughts.

22. Counselor Malorana was to retire from the D.O.C. on October 1, 2022, which became a big concern to mental health staff and custodial officials that Plaintiff could regress to violent and regressive forms of behavior. It is what prompted Counselor Malorana and Plaintiff's mental health treatment team, social worker Madeline Schena and Psychologist Leonard Santarsiero to advocate for Plaintiff to obtain a consistent amount of productive work/job assignment. Understanding that due to Plaintiff's history and reputation, people are not trusting and/or fair would be difficult for Plaintiff to get a job assignment. They was able to have the religious coordinator Rev. Wright agree to provide Plaintiff with a job assignment when Counselor Malorana retired.

23. Counselor Malorana, for personal matters, had to retire sooner than expected on August 2022. Plaintiff submitted a request form to Rev. Wright to inform him that Counselor Malorana had retired.

24. Rev. Wright had Plaintiff training August 14, 2022, and August 17, 2022 and requested that Plaintiff be classified as the job assignment of the religious service unit aka multi-purpose room). On August 17, 2022, Defendant Doran interfered and denied Plaintiff the job assignment.

25. Other inmates working for Religious Services was hired by the Religious Coordinator and did not have to be approved by the facility warden nor deputy warden. Two (2) weeks before Plaintiff was training, Rev. Wright hired another inmate and Defendant Doran was not in the process.

26. On August 17, 2022, Plaintiff submitted a request form to Defendant Dougherty informing him that Defendant Doran **continues** to interfere and abuse his authority with respect to job assignment. Defendant Dougherty responded that they had a meeting to discuss Plaintiff's job assignment.

27. On August 30, 2022, Defendants Dougherty and Doran along with other prison officials had a meeting to discuss Plaintiff's job opportunity at the Religious Service. Plaintiff was not present nor for the meeting. Without any explanation whatsoever the job assignment was denied for ninety (90) days.

28. On September 1, 2022, Plaintiff submitted a grievance regarding him

not being present nor heard from at the meeting regarding the job assignment opportunity and Defendant Doran abusing his authority to interfere with job assignment(s) and being treated differently from other inmates in general population as others do not have to have meetings or approval from a Warden or Deputy Warden.

29. On September 2, 2022, several Lieutenants and Intelligence staff rushed Plaintiff. Intelligence staff walked in Plaintiff's cell for approximately twenty (20) seconds, walked out with a weapon. Plaintiff was sprayed with pepper spray, stripped search and placed on in-cell restraints and placed in a cell that also had a weapon. Plaintiff began banging his head and thoughts of harming himself was later placed in the medical infirmary.

30. On September 7, 2022, Defendants Dougherty and Doran met with Plaintiff in the medical infirmary. They stated with sarcasm, "We just knew you could not last ninety (90) days." Plaintiff responded that Defendants had set him up cause circumstances prove it, that Plaintiff submitted a grievance the next day and several Lieutenants and Intelligence staff come to place Plaintiff in Segregation, before the Intellience staff entered the cell knowing they were going to discover something. The staff walked in and out in about twenty (20) seconds which only means they knew exactly were to look or planted, and the informant that notified the Intelligence was in the Plaintiff's cell doing Plaintiff's tattoos that same day, and the informant did not get into any trouble for being out of place or doing the tattoo as a result for stashing the weapon, then they placed Plantiff in segregation after Plaintiff was stripped naked and searched through procedures and did not have personal belongings (property), there is another weapon in the segregation cell where Plaintiff was placed into. Defendant Doran asked Plaintiff, "Is that the reason why you did not plead guilty?", and then stated that when Counselor Maiorana was around Plaintiff did not submit one request or grievance, and now that she is gone Plaintiff can not stop complaining, so they should also get rid of the Plaintiff because that would also stop Plaintiff from getting any relief in his other lawsuits. Plaintiff stated that Defendant Doran didn't know anything in regards to Plaintiff's lawsuits and Defendant Doran named the Assistant Attorney General in Plaintiff's case. Plaintiff asked Defendant Dougherty if he was going to allow him to threaten him and Defendant Dougherty stated that he did not hear anything and that why should he interfere after Plaintiff was making allegations against his staff about setting up the Plaintiff. Defendant Dougherty stated that if Plaintiff was to plead guilty he would make sure that Plaintiff

does not transfer to another facility. Plaintiff reluctantly agreed to plead guilty to all four (4) disciplinary reports.

31.  On September 12, 2022, Plaintiff, while in segregation, was asked to cuff up to speak with mental health staff. When Plaintiff exited the cell he was met with several custodial staff including the Intelligence Lieutenant, Shift Commander Captain and Defendant Pieri. Plaintiff was informed that he was being transferred to Cheshire Correctional Institution.

32.  Plaintiff was concerned as to why the Intelligence Lieutenant was transferring the Plaintiff. Intelligence Lieutenant had stated that it was requested by Defendant Doran and that the transfer was not by Population Management, but a favor from Defendant Reis to Defendant Dougherty.

33.  Connecticut D.O.C. Policy states decisions involving a transfer to another facility are made at the discretion of the Director of Offender Classification of Population Management.

34.  Plaintiff informed Defendant Pieri that he was mad because Defendants Dougherty and Doran tricked him into pleading guilty and that he was afraid as Plaintiff has not recovered from the long-term effect of solitary confinement to start over in a different facility that he is not famaliar with anybody that understands his situation, history, diagnosis that could assist and help him.

35.  Defendant Pieri has a pending Civil Rights action against her by this Plaintiff in the matter of Jusino v. Pieri, 3:22-cv-00092 (SRU). Defendant Pieri never evaluated nor treated Plaintiff, restricted Plaintiff from weekly therapy to bi-weekly and refused to document Plaintiff's psychistric reports to Plaintiff's records and denied Plaint the proper treatment designed for Plaintiff's disorder. As a result from Defendant Pieri, Plaintiff's mental health exacerbated and developed persistent depressive disorder. Defendant Pieri had also notified Counselor Maiorana through e-mail that she did not want to be involved with Plaintiff's treatment.

36.  On September 12, 2022, Defendant Pieri contacted Defendant Wolf-Craig and informed her that Plaintiff has a lawsuit and asked that Defendant Wolf-Craig provide Plaintiff with the bi-weekly sessions, to support her defense.

37.  Defendant Wolf-Craig, without any evaluation, conspired with Defendant Pieri and denied Plaintiff proper treatment designed for Plaintiff's disorder to provide bi-weekly sessions, to support Defendant Pieri defense.

38.  Plaintiff is now housed in the North Block Two (2) housing unit at the Cheshire facility that was designed for Administrative Segregation status and the

Disciplinary Status and is currently one (1) of two (2) housing units that house high-security inmates which Plaintiff is not classified as high-security or any special monitor status.

39. Plaintiff has been subjected to live in inhumane and dangerous conditions of hazardous conditions and fire safety knowing that Plaintiff has a history of setting fires to his cell:

    A) No sprinklers in plaintiff's cell;

    B) No smoke detector in Plaintiff's cell;

    C) No emergency communications button in cell;

    D) No smoke exhaust system or vent in the cell;

    E) Antiquated vent system;

    F) No fire drills;

    G) Loose paper due to denial of legal envelopes;

    H) Unreliable locking system to cell doors;

    I) No carbon monoxide detectors.

40. Plaintiff has been subjected to live to abysmal inhumane and dangerous conditions. Some conditions more inhumane and abysmal than those in Restrictive Housing status:

    A) Antiquated vent system that does not provide adequate air;

    B) Fifty vent;

    C) No exhaust vent;

    D) No emergency contact button to notify staff in case of an emergency or medical emergency;

    E) Unreliable locking system to cell door and unable to unsecure doors without keys, if staff lose keys during an emergency could cause catastrophic results;

    F) Inadequate "BLANKET" which is a ultra thin thread that is crocheted and only one (1) blanket is provided for Winter that does not protect from the cold and you could see right through the blanket;

    G) Subjected to eat your meals in the same area as the recreational and exercise area and feet away from the showers that has a strong bad odor and black mold on the walls; cold food due to procedure;

    H) Recreational are approximately three (3) from the cell door that the loud noises disturb the concentration and mental health;

    I) No intercoms in the cell to hear announments with headphones required and recreational loud noises make it nearly impossible to hear and

and understand staff over the antiquated speaker in back of the unit.

**J.**  Laundry is conducted once a week but when housed in Restricted Housing aka (RHS) status it was conducted twice (2x) a week; also in other facilities;

**K.**  Denial legal envelopes display documents for staff to review;

**L.**  There is no confidential legal telephone calls with attorneys as legal calls is conducted in staff office and staff refuse to leave due to staff equipment and supplies being unsupervised;

**M.**  Timers on the showers whereas there is no timers on the showers  in the other housing units; and inadequate shower cleaning;

**N.**  Trapdoors on cell doors in normal housing unit whereas the only other unit with trapdoors on celldoors is in Segregation;

**O.**  Commissary purchased twice a month, but RHS and other general population can purchase weekly commissary;

**P.**  Visting once a week, but in RHS Plaintiff was receiving three (3) visits a week and at the MacDougall facility;

**Q.**  No extended time for out of state visits, Plaintiff in RHS and MacDougall facility received extended visiting hours from mother who travels from Florida;

**R.**  Visiting is first come. There is no scheduling visit. Visitors only show up and if they wasn't first they would be asked to leave;

**S.**  Mental Health Unit (MHU) does not provided privacy as required. Opened door and within earshot of others; and same area as the administration and Intel

**T.**  Medical is distributed in unit where medication in the housing unit dayroom is seen and hear by other inmates in close proximity;

**U.**  No television stand/shelf in the inamte's cell;

**V.**  Inadequate mailbox that does not allow you to place manilla envelopes (Legal mail) nor thick envelopes inside the mailbox;

**W.**  Required to sign-up on a sheet of paper taped to the closet door in the housing unit dayroom to obtain services, such as, Notary, Library. medical, etc., which requires the inamte to put name and number on sheet allowing other inmates to have access to your personal information;

**X.**  Inadequate safety cell and NO INFIRMARY or SUICIDE WATCH CELL;

**Y.**  Contact visit is limited. You're not allowed to hold hands, touch your loved ones with the exception of a brief hug over a two (2) foot table which makes it less than a full hug and is uncomfortable as a table is pressing against your body as you stretch over the table; and impossible for handicap and mother;

**Z.**  Medical Staff have access to Mental Health information, notes, reports, etc.

**AA.**  Facility procedures to obtain medical service (sick call) violates the D.O.C. policy and makes it difficult to obtain proper services and privacy.

41. Plaintiff's e-messaging privileges was restricted, no notice, no sanctions, not equal as others and no reimbursement to Plaintiff, friends or family, etc.

42.  Plaintiff is treated differently than other inmates with the same classification that are housed in the T.R.U.E. unit located in North Block 5 & 6.

### T.R.U.E. UNIT

A.  Extra recreational time and out of cell time;

B.  Programming that is not available to others not in the T.R.U.E. unit;

C.  Privileges such as "Play Station", Board games that is not available in the commissary; etc.

D.  Family engagement, allowed to engage with their family (hugs, kisses, etc;

E.   Familiarity with staff, allow to engage in activities such as sports, games, and parties, etc.;

F.  Extra visitations;

G.  Less restrictive discipline, substitutes segregation with "Time Out" such as lock-up in their cell until they are calmed down;

H.  Parties, celebration of holidays, treats, pizzas, cakes, etc.

43.  Plaintiff is treated differently than other inmates with the same classification that are housed in the "Honorary Unit" located in North Block 3.

### HONORARY UNIT

A.  Extra recreational time and out of cell time;

B.  Automatic job privileges and opportunities, etc.

44.  Defendants Dougherty and Doran maliciously acted to transfer Plaintiff from MacDougall C.I. resulted in Plaintiff's official capacity for injunctive relief in Plaintiff's other pending lawsuits to be dismissed on the grounds that Plaintiff was transferred from the MacDougall C.I.;

45.  Plaintiff was charged at the Hartford Superior Court for Possession of a Weapon in a Correctional Facility (C.G.S. 53a-174A) for the weapons that Defendants Dougherty and Doran maliciously tricked Plaintiff into pleading guilty to.

46.  The Prison Litigation Reform Act (PLRA) of 1996, 42 U.S.C. Section 1997E(A) requires an inmate to exhaust administrative remedies prior to seeking relief in federal court. Defendants Reis and Quiros prohibited Plaintiff from exhausting his administrative remedies on each and all claims;

A.  Plaintiff was restricted from filing administrative remedies and

(10)

threatened with consequences if he was to continue to submit administrative remedies and denied the right to appeal the decision;

    **B.**  Administrative Remedies Policy requires that each grievable issue be submitted separately on a administrative remedies form, but also prohibits that you submit more than eight (8) administrative remedies in a sixty (60) day period and only allows to file within thirty (30) days of the discovery of the cause of the grievance;

    **C.**  Administrative Remedies practices and procedures prohibits a level 3 review of administrative remedies;

    **D.**  Administrative remedies forms was changed to limit the grievances and problems;

    **E.**  Inadequate investigation to administrative remedies;

    **F.**  No resoulutions to administrative remedies.

## L E G A L   C L A I M S

### AS FOR A FIRST CAUSE OF ACTION, VIOLATION OF JUSTINO'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

    47.  Paragraphs 1 through 58 are hereby realleged and incorporated by reference as if set forth herein.

    48.  The injuries sustained by Plaintiff Justino, including but not limited to during his confinement beginning at MacDougall C.I. and continuing to the present day were and are the direct result of deliberate indifference of the Defendants in one or more of the following ways:

    **a)**  Defendants Reis, Rodriguez, Quiros, Mulligan, Nunez, Pieri, Doran, Wolf-Craig and Dougherty delberate indifference for Plaintiff Justino's safety and mental health by conspiring, both collectively and individually to subject Plaintiff Jusino to inhumane and dangerous conditions;

    **b)**  Defendants Reis, Rodriguez, Quiros, Mulligan, Nunez, Pieri, Doran, Wolf-Craig and Dougherty deliberate indifference and/or reckless disregard for their duty to protect Plaintiff Jusino, an inmate in their care and custody;

    **c)**  Defendants Pieri and Wolf-Craig deliberate indifference doe Plaintiff Jusino's safety and mental health by conspiring, both collectively and individually to deny Plaintiff proper treatment designed for his mental health diagnosis;

    **d)**  Defendants Dougherty and Doran deliberate indifference and/or reckless disregard abused their authority to deny Plaintiff a job assignment;

    **e)**  Defendants Dougherty and Doran deliberate indifference and/or reckless

disregard conspired, both collectively and individually to prevent Plaintiff from
making allegations against staff planting weapons;

  **f)** Defendants Dougherty and Doran deliberate indifference and/or reckless
disregard conspired both collectively and individually with Defendant Reis to
specifically have Plaintiff transferred to Cheshire C.I.;

  **g)** Defendants Reis, Nunez, Rodriguez, Quiros, Mulligan deliberate indif-
ference and/or reckless disregard to Plaintiff Jusino's safety by subjecting Jusino
to fire hazard conditions knowing Plaintiff has a history of setting his cell(s) on
fire, and inhumane and absymal conditions.

### AS FOR THE SECOND CAUSE OF ACTION VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

49. Paragraphs 1 through 58 are hereby realleged and incorporated by refe-
rence as if fully set forth herein.

50. Defendants Reis, Nunez, Rodriguez, Quiros, Mulligan violated Plaintiff's
rights to Due Process by conspiring to restrict Plaintiff access to his e-messaging.

51. Defendant Reis and Quiros violated Plaintiff's rights to Due Process by
resticting Plaintiff's rights to exhaust his administrative remedies.

52. Defendants Dougherty and Doran violated Plaintiff Jusino's right to Due
Process by denying Plaintiff to be heard regarding the meeting for the job assign-
ment.

53. Defendants Dougherty and Doran violated Plaintiff Jusino's rights to Due
Process by manipulating Plaintiff to not be heard in his weapons disciplinary
reports.

54. Defendants Quiros, Mulligan, Rodriguez, Reis, Nunez violated Plaintiff
Jusino's right to Equal Protection and to be treated equally by creating and allow-
ing the "T.R.U.E. Unit".

55. Defendants Reis, Nunez violated Plaintiff Jusino's right to Equal Pro-
tection and to be treated equally by creating and allowing the "Honorary Unit".

### AS FOR THE THIRD CAUSE OF ACTION VIOLATION OF PLAINTIFF JUSINO'S RIGHTS UNDER THE FIRST AMENDMENT OF THE U.S. CONSTITUTION

56. Paragraphs 1 through 58 are hereby realleged and incorporated by refe-
rence as if fully set forth herein.

57. Defendants Pieri and Wolf-Craig retaliated against Plaintiff by con-
spiring to deny Plaintiff mental health treatment to support her defense in the
pending litigation case against her.

58. Defendants Dougherty, Doran, and Reis retaliated against Plaintiff Jusino by conspiring to transfer Plaintiff to prevent lawsuit and knowingly that it would affect Plaintiff's injunctive relief in Plaintiff's pending litigation(s) and interfering with making allegations of staff planting weapons.

## P R A Y E R   F O R   R E L I E F

WHEREFORE, THE Plaintiff respectfully request that this Honorable Court GRANT the following relief:

    1. Injunctive Relief requiring Defendants to provide adequate mental health care and treatment designed for Plaintiff's disorders;

    2. Injunctive Relief requiring Defendants to provide Plaintiff e-messaging privileges; and reimbursement of stamps;

    3. Injunctive Relief requiring Defendants to fix and correct the inhumane and dangerous conditions;

    4. Injunctive Relief requring Defendants to change the Administrative Remedies Policy to comply with the P.L.R.A..

    5. Injunctive Relief requiring Defendants to treat Plaintiff equally to others in the T.R.U.E. unit and Honorary unit.

    6. Reimbursement of cost of service for official capacity on Injunctive Relief due to Defendants malicious transferring of Plaintiff;

    7. Punitive Damages

    8. Nominal Damages

    9. Compensatory Damages

    10. Cost of this Action

    11. Such other relief that this Honorable Court deems to be appropriate and just.

Respectfully submitted;

Jose A. Jusino, Plaintiff

\* Plaintiff provided Defendants Quiros, Mulligan, Reis and Rodriguez a draft of the foregoing in a attempt to resolve the complaint. Plaintiff requested to be transferred back to MacDougall C.I. and his e-messaging privileges restored. Defendant Reis informed Plaintiff that it is his right to file the lawsuit, but that Plaintiff would not be returned to MacDougall C.I. and if Plaintiff was to file the lawsuit he would eventually be moved and/or transferred and it could be worst. and Defendant Wolf-Craig has denied Plaintiff Mental H alth services ever since the draft.

(13)

U.S. Dist. Court
Dist. of. Conn

Joss A. Jusino : 3:21-CV-00689 (SRU)
             v.
Colleen Gallagher, Et Al : February 28, 2023


ADDITIONAL Facts In Support of Motion
To Dismiss [ST] For Perjury

After More Fact Checking Defendant Caplan
made more False Claim's In Her Declaration
under perjury:

Def. Declaration pg. 7 pr. 30. Defendant Claim
That on 7/16/2021 Uconn Orthopedic
Examine plaintiff left shoulder, As Shown
In Defendant Exhibit plaintiff medical
Record) This Orthopedic only Examine
plaintiff left foot, There is no mention of
Any left shoulder Examination as Stated
By Defendant. (???)

Defendant In Summary Judgment Claim That
She was never Foward Any Grievance But on
Decleration Admit she was Foward Grievances
pg 9. pr 38

Defendant Decleration pg 10 pr 39 Claim
She "Reviewed The physical Therapist Assessment And
plan" with Plaintiff, But on Plaintiff Request
For Admission # 14 Defendant Stated "Defendant
denies Ever Receiving a copy of any Exercises
provided to The plaintiff by The physical Therapist
That Evaluated Him" (see Attachment)

Additional plaintiff Also Present Defendant Claim
That plaintiff Should Have Had a Expert witness
To Show That plaintiff was Injured From The wellness
program. The uconn physical Therapist That
Evaluated plaintiff In Her Report (Def Exhibit A)
Stated "Impairment : Range of motion, muscle
performance, Posture" which was Injuries not
Reported Before The wellness program

Plaintiff
Joss A Jesino

2 of 2

8.    With respect to plaintiff health service administrative remedy dated Sept.15.2021 plaintiff stated that defendant has "personal animosity and has been reckless with plaintiff care that has cause to suffer more pain/injurie". [Sic.]

**RESPONSE: Admitted that plaintiff submitted a level 1 health services administrative remedy that is dated September 15, 2021. The text of plaintiff's administrative remedy form speaks for itself.**

9.    November 25.2021 plaintiff submitted a health service administrative remedy about defendant refusal to provide treatment based on a personal animosity for complaint against her.  [Sic.]

**RESPONSE: Admitted that plaintiff submitted a level 1 health services administrative remedy that is dated November 25, 2021. The text of plaintiff's administrative remedy form speaks for itself.**

10.    March 5.2022 plaintiff submitted a health service administrative remedy about defendant no providing any treatment/follow up to a ongoing issues. [Sic.]

**RESPONSE: Admitted that plaintiff submitted a level 2 health services administrative remedy that is dated March 5, 2022. The text of plaintiff's administrative remedy form speaks for itself.**

11.    Defendant never evaluated plaintiff shoulder injurie from July 31.2021 threw the court initial review order dated 6/9/2022/Present.  [Sic.]

**RESPONSE: Denied.**

12.     Defendant never provide plaintiff with treatment to his shoulder injury from July 31.2021 to present.

**RESPONSE: Denied.**

13.     December 17, 2021 plaintiff inform defendant that he didn't have copy's of his physical therapy exercises.

**RESPONSE: Admitted.**

14.     Defendant never provided plaintiff with copy's of the physical therapy exercises.

**RESPONSE: The defendant objects to this request because it improperly assumes a contested fact, i.e., that the defendant had a copy of the physical therapy exercises, which is not true. The defendant <u>denies</u> ever receiving a copy of any exercises provided to the plaintiff by the physical therapist that evaluated him, and accordingly, <u>could not</u> have provided him with something she did not have.**

Dated at Hartford, Connecticut, this 27th day of October, 2022.

*Respectfully submitted,*

DEFENDANT,
 JEAN CAPLAN

WILLIAM TONG
ATTORNEY GENERAL

BY:___ /s/ *Frank J. Garofalo, III* ___
        Frank J. Garofalo, III
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct30938
        E-Mail:  frank.garofalo@ct.gov
        Tel: (860) 808-5450
        Fax: (860) 808-5591

4